*713 OPINION OF THE COURT
James B. Kane, J.
On January 5, 1976, a dispute arose between the City of Lackawanna and the Union, AFSCME, AFL-CIO, Local 1205, when the city discharged four of its employees, Levulis, Dombrowski, Plaza and Michalek. A grievance was subsequently filed concerning the discharges of the above-named employees and the matter was processed through the grievance procedure without resolution. The matter was then submitted to arbitration before arbitrator Jacob D. Hyman for decision.
On April 30, 1976, a hearing was held before the arbitrator wherein evidence and argument were presented by both parties. Thereafter, an award and decision was made and acknowledged by the arbitrator on May 12, 1976, which held in part: "each of them shall therefore, be reinstated with full compensation for all lost time and with full restoration of rights and conditions of employment”.
The city made a motion before this court to vacate the arbitrator’s award as being in excess of his powers. Respondents cross-moved to confirm the arbitrator’s award. This court in its memorandum decision of February 28, 1977 denied the city’s motion to vacate and granted respondents’ cross motion to confirm the arbitrator’s award.
The court on March 25, 1977 signed an order to this effect; a certified copy of which was served upon the city on or about March 29, 1977. On or about April 25, 1977, the city filed a notice of appeal from said order to the Appellate Division, Fourth Department. The Appellate Division, Fourth Department, by its order dated December 16, 1977 dismissed the city’s appeal from this court’s order because of the city’s failure to diligently prosecute its appeal.
In an attempt to determine the amount of compensation due the respondents, their attorney on January 18, 1978 wrote to the city’s comptroller requesting certain payroll information and stated that if the information was not supplied by a specified date he would apply for a judgment based on available information. On January 30, 1978 respondent’s attorney wrote to the city’s attorney, with copies to the Mayor and City Council, suggesting that the city comply with the court’s order and indicating that if payroll information was not furnished he would apply for a judgment based on the data in his possession.
*714 Not having received the requested information and the discharged employees still not having been reinstated, respondent’s attorney on July 17, 1978 applied for and was granted a judgment for back pay by this court. A certified copy of this judgment was served on the city attorney and the Mayor. The city filed a notice of appeal from this order on August 4, 1978.
The appeal was not perfected and on November 3, 1978 respondent’s attorney obtained an order to show cause, as to why the City of Lackawanna should not be punished by fine for contempt of court, from Justice Kronenberg, returnable on November 20, 1978 before this court.
On the return date the city stated it would reinstate the employees involved and since sometime in December, 1978, they have been restored to the payroll of the city.
The principal issue to be determined by this court is the amount of compensation these reinstated employees are entitled to receive for their period of wrongful removal.
The city contends the law on the amount of compensation is "absolutely clear”; any compensation earned from any other employment during the period of wrongful removal is to be deducted from his municipal salary that he would have earned but for the wrongful removal, relying on section 77 of the Civil Service Law, Picconi v Lowery (36 NY2d 221); and Matter of Brayer v Lapple (52 AD2d 1034).
None of the cases cited by the city dealt specifically with the factual situation facing this court.
In Picconi v Lowery (supra), Judge Jasen for a unanimous Court of Appeals stated clearly that section 77 of the Civil Service Law was not applicable or controlling on the case before them. However, he did note that such deductions for outside earnings were permitted by section 77 of the Civil Service Law, in order to prevent a reinstated employee from reaping a windfall.
In Matter of Brayer v Lapple (supra), the issue on appeal was whether or not the named employee was wrongfully discharged. Since the lower court had held that he had not been wrongfully discharged the issue of compensation was not before the appellate court. The appellate court in reversing the lower court and finding wrongful discharge merely stated the provisions of section 77 of the Civil Service Law. None of the cases cited or referred to by the city directly address the factual situation before this court.
*715 The city’s strongest reliance is placed on the specific language of section 77 of the Civil Service Law: "Any officer or employee who is removed from a position in the service of the state or of any civil division thereof in violation of the provisions of this chapter, and who thereafter is restored to such position by order of the supreme court, shall be entitled to * * * the salary or compensation which he would have been entitled by law to have received in such position but for such unlawful removal, from the date of such unlawful removal to the date of such restoration, less the amount of compensation which he may have earned in any other employment or occupation and any unemployment insurance benefits he may have received during such period. Such officer or employee shall be entitled to a court order to enforce the payment of such salary or compensation.”
Attorney for respondent asserts it would be patently unjust for this court to apply section 77 of the Civil Service Law literally given the circumstances because such application would permit the city to destroy the job rights of a person who was industrious enough to hold two jobs because in the event of his being wrongfully removed he would never be able to recover his wages and other rights he was wrongfully deprived of. In effect a literal application of section 77 of the Civil Service Law would allow an employer to deliberately violate the job rights of any worker holding two jobs knowing back pay could never be recovered nor the employer penalized. The court agrees.
Section 77 of the Civil Service Law was derived from former section 23 of the Civil Service Law. By chapter 734 of Laws of 1935, section 23 was amended to cover "Compensation of officers and employees reinstated by order of the courts.” An examination of the bill jacket, re: chapter 734 of the Laws of 1935 disclosed that an objection was made to the first print of the bill by the Director of the Budget on the ground that no deduction provision was included. In his memorandum, the official stated that "such procedure is unjustified as the employee would be receiving compensation from two sources for identical time of service.” On the basis of this reasoning, the deduction provision was inserted in the bill reprint (see 9 Opns St Comp, 1953, p 69).
Respondents’ attorney relies in part on opinion 71-607 of the State Comptroller (27 Opns St Comp, 1971, p 141) wherein it was held: "Where a village employee has been acquitted of a *716 charge of misconduct, compensation received by him for off-duty, part-time employment which he had held prior to being suspended, as well as during his suspension, should not be deducted from the salary due him from the village during the period of his suspension.”
Admittedly this opinion dealt with subdivision 3 of section 75 of the Civil Service Law and not section 77 of the Civil Service Law but the language in issue is the same: "If he is acquitted, he shall be restored to his position with full pay for the period of suspension less the amount of compensation which he may have earned in any other employment or occupation less any unemployment insurance benefits received during such period.” (Civil Service Law, § 75, subd 3.)
The purpose of this language, whether in sections 75 or 77 of the Civil Service Law, is to place an employee who has been wrongfully removed or who has been acquitted of a charge of incompetency or misconduct in a position of status quo ante and to reimburse him for the loss of earnings which resulted from his wrongful removal or suspension. The only offsets envisioned by the statute are those which he received in lieu of his compensation from the municipality. (See 27 Opns St Comp, 1971, p 141; 31 Opns St Comp, 1975, p 18; 9 Opns St Comp, 1953, p 69.)
It is left to this court to determine based upon the factual situation before it, what compensation, if any, received by these employees during the time of their wrongful removal was in lieu of that due them from the municipality. Any wages paid to an employee during a period of wrongful removal or suspension from his municipality employment, earned from a second job which the employee held during the time of this municipal employment with the knowledge and/ or consent of this municipal employer and continued to hold during all or part of his wrongful removal or suspension are not to be considered as received in lieu of his compensation from the municipality and, therefore, are not a proper deduction from the amount due him from the municipality.
The city has not challenged the right of its employees to hold another job so long as it does not interfere with the performance of their municipal duties. In this specific case it was never alleged by the city that the second jobs held by the discharged employees interfered with their city job. Respondents’ attorney states it is a common practice for many of the city’s employees to work at two jobs. *717 As regards respondents’ claim for reimbursement for vacation pay, personal leave days and birthdays the city relies on the logic of May v Shaw (92 Misc 2d 140), wherein it was held that when an illegally discharged police officer was reimbursed after his reinstatement the amount of salary based on a full 52-week year, he was not entitled to vacation credit over and above such full-pay reimbursement. (See, also, Alongi v City of New York, 92 Misc 2d 1082; Matter of Sweeney v Donovan, 12 AD2d 864.) This court agrees with the reasoning of these cases and determines that respondents are not entitled to vacation, personal leave and birthday pay, over and above the reimbursement ordered by this court. The city has conceded respondents’ entitlement to overtime pay in specified amounts.
Equity demands in a situation such as this wherein it was solely the city’s refusal to reinstate these employees in compliance with this court’s order that resulted in the extensive delay and the extraordinary amount of back pay, the one who is responsible for the wrongdoing or the delay should assume the risk of liability for the compensation (Matter of Amkraut v Hults, 21 AD2d 260, affd 15 NY2d 627).
Utilizing the reasoning and guidelines set out above, petitioner and respondent are to arrive at the total amount of compensation due the wrongfully discharged employees. If petitioner and respondents are unable to agree on the amount due, they are to submit their figures with accompanying documentation and explanation to the court and the court will complete the computation.